DECISION. *Page 2 
{¶ 1} Dante Shelton was convicted of robbery, kidnapping, aggravated burglary, two counts of aggravated robbery, three counts of rape, and four counts of receiving stolen property, as well as accompanying firearm specifications. Shelton was sentenced to 11 years in prison and was adjudicated a sexual predator.
 {¶ 2} Shelton now appeals. In two assignments of error, he argues that the trial court erred by (1) denying his motions to suppress and (2) adjudicating him a sexual predator.
 Denial of Untimely Motions to Suppress {¶ 3} In his first assignment of error, Shelton challenges the trial court's denial of his untimely motions to suppress evidence.
 {¶ 4} Under Crim.R. 12, motions to suppress evidence must be filed within 35 days after arraignment or seven days before trial, whichever is earlier.[1] A defendant's failure to file a timely motion to suppress evidence constitutes a waiver of any objection to the introduction of the evidence at trial.[2] But a trial court may grant relief from the waiver where the defendant demonstrates good cause for his failure to file a timely motion.[3]
 {¶ 5} The determination of "good cause" must be made on a case-by-case basis.[4] We have held that "[u]nless the defendant's counsel demonstrates to the *Page 3 
satisfaction of the court that he did not know and could not reasonably have been expected to know of facts tending to establish a constitutional violation of his client's rights in sufficient time to have complied with the time limitations of Crim.R. 12, then he has failed to sustain his burden of rebutting the presumption of waiver, and the trial court does not err in admitting the challenged evidence."[5]
We review a trial court's denial of an untimely motion to suppress for an abuse of discretion.[6]
 {¶ 6} In this case, Shelton did not file a motion to suppress until July 20, 2006, more than five months beyond the deadline provided by Crim.R. 12.
 {¶ 7} Shelton's cases were originally scheduled for trial in February 2006. Upon Shelton's requests, the cases were rescheduled three more times, with the final setting on August 21, 2006.
 {¶ 8} On the morning of trial, defense counsel asked the trial court to hear his motions to suppress. The motions were directed at statements Shelton had made to police, as well as to the traffic stop that had led to his arrest.
 {¶ 9} Counsel proffered a police dispatch report and a tape recording of police radio transmissions related to the traffic stop, as well as summaries of Shelton's statements to police. Counsel said that he had not obtained the information supporting his motions until July 2006 "after a lengthy investigation," but he did not explain why it had taken so long to obtain the information.
 {¶ 10} The state's responses to discovery had been completed by February 7, 2006. The state had included summaries of Shelton's statements to police. In *Page 4 
March 2006, the trial court had granted Shelton's request for the appointment of an investigator. Yet Shelton did not file a motion to suppress for another four months.
 {¶ 11} Defense counsel gave no explanation for why it had taken from December to July to conduct his investigation, why an investigator appointed at the end of March 2006 had not simply obtained the police dispatch documentation at that time, or why it had taken another four months to "discover" the information. And at no point did the defense request the court's leave to file an untimely motion to suppress.
 {¶ 12} Clearly, defense counsel knew through discovery that Shelton had spoken to police several times and that he had been arrested during a traffic stop. Defense counsel failed to show that he could not have discovered the facts supporting the motions to suppress within the time limitations of Crim.R. 12.
 {¶ 13} Because Shelton's motions to suppress were filed more than five months out of time, and because he supplied no acceptable justification for his failure to timely file the motions, we cannot say that the trial court abused its discretion by denying the motions without a hearing. We overrule the first assignment of error.
 Sexual-Predator Determination {¶ 14} In his second assignment of error, Shelton argues that the trial court erred by finding him to be a sexual predator under R.C. Chapter 2950. He contends that the trial court lacked jurisdiction to conduct a sex offender classification hearing because the hearing was not conducted on or before the date of sentencing. He also argues that the predator determination was against the manifest weight of the *Page 5 
evidence, and that it was invalid because the sentencing court did not conduct the classification hearing.
 A. Timing of the Sexual-Predator Hearing {¶ 15} Under R.C. 2950.09(B)(1)(a), "[t]he judge who is to impose sentence on a person who is convicted of or pleads guilty to a sexually oriented offense * * * shall conduct a hearing to determine whether the offender is a sexual predator * * *." R.C. 2950.09(B)(2) provides, "Regarding an offender, the judge shall conduct the hearing required by division (B)(1)(a) of this section prior to sentencing and, if the sexually oriented offense for which sentence is to be imposed is a felony and if the hearing is being conducted under division (B)(1)(a) of this section, the judge may conduct it as part of the sentencing hearing * * *."
 {¶ 16} In State v. Bellman, the Ohio Supreme Court addressed the statutory requirement regarding the timing of a sexual-predator hearing.[7] In Bellman, the defendant at sentencing had explicitly agreed to a postponement of the hearing.
 {¶ 17} The supreme court noted that "[a]s a general rule, a statute providing a time for the performance of an official duty will be construed as directory so far as time for performance is concerned, especially where the statute fixes the time simply for convenience or orderly procedure."[8] The court explained, "Generally, then, it is only where a statutory time requirement evinces an object or purpose to limit a court's authority that the requirement will be considered jurisdictional."[9] *Page 6 
 {¶ 18} The court noted that the language of R.C. 2950.09(B) "`does not establish that its time periods are for anything other than convenience and orderly procedure,' and it `does not include any expression of intent to restrict the jurisdiction of the court for untimeliness.'"[10] The court held that the statutory requirement regarding the timing of a sexual-predator hearing is not jurisdictional, and that a defendant may waive it.[11]
 {¶ 19} In this case, Shelton argues that, unlike the defendant inBellman, he did not explicitly waive the statutory time requirement. Shelton contends that at his August 22, 2006, sentencing, the parties had mutually agreed to postpone the classification hearing until October 25, 2006, to allow him to remain in the local jail facility in the meantime.
 {¶ 20} But the record reflects no mention of an agreement by the parties to allow Shelton to remain in the local jail, and no objection by Shelton to the postponement. It was not until the sexual-predator hearing that an agreement was mentioned and that Shelton first lodged an objection to the timing of the hearing.
 {¶ 21} In any event, because the time requirement in R.C.2950.09(B)(2) is not jurisdictional, the trial court's failure to comply with the requirement did not deprive it of jurisdiction to hold the sexual-predator hearing after sentencing.[12] Moreover, as one court has said, "[w]e fail to see how [the defendant] could have been prejudiced by the trial court sentencing him before declaring him a sexual *Page 7 
predator. If anything, a prior finding that an offender is a sexual predator would tend to increase, not lessen, the sentence that he receives."[13]
 B. Evidence Supported Sexual-Predator Determination {¶ 22} Moreover, Shelton's sexual-predator adjudication was not against the weight of the evidence. In reviewing the factors in R.C.2950.09(B)(3), the court noted that Shelton was a "young offender" who had an extensive criminal and delinquency history. The court considered Shelton's prior adjudication for sexual imposition, as well as his participation in available programs for sexual offenders.
 {¶ 23} The court considered Shelton's mental illness or disability and noted that he was "basically a sociopath." The court determined that the nature of Shelton's conduct was part of a demonstrated pattern of abuse in that Shelton had "a history of doing the same sort of thing."
 {¶ 24} In concluding that Shelton had displayed cruelty during the commission of the rapes, the court stated, "He held a gun to her head. I guess kind of [choked] her. Pulled her head back. Woke her up in the middle of the night and raped her a number of different ways, orally and vaginally. Performed oral sex on her. Made her perform oral sex on him. Took her out to the bank to get monies. Drove her — so he essentially kidnapped her too. That's pretty cruel."
 {¶ 25} The court also considered the report of Dr. Sherry Baker, the psychologist who had evaluated Shelton. Dr. Baker identified several risk factors presented by Shelton that were significantly correlated with sexual-offense *Page 8 
recidivism. The doctor reported that Shelton's score on a Static-99 test reflected that Shelton was in the "high" risk category for reoffending.
 {¶ 26} Because competent, credible evidence supported the trial court's sexual-predator determination, we must affirm it.[14]
Moreover, because the trial court was apprised of all the facts and had the entire record before it, we reject Shelton's argument that any prejudicial error occurred when the sentencing court did not conduct the sexual-predator hearing.
 {¶ 27} Accordingly, we overrule the second assignment of error and affirm the judgment of the trial court.
Judgment affirmed.
PAINTER, P.J., and HILDEBRANDT, J., concur.
Please Note:
The court has recorded its own entry on the date of the release of this decision.
[1] See Crim.R. 12(C)(3) and (D).
[2] See Crim.R. 12(H); State v. Wade (1978), 53 Ohio St.2d 182,373 N.E.2d 1244, paragraph three of the syllabus, vacated on other grounds (1978), 438 U.S. 911, 98 S.Ct. 3138.
[3] Crim.R. 12(H).
[4] See, e.g., State v. Brown (1988), 38 Ohio St.3d 305,528 N.E.2d 523.
[5] State v. Murphy (1982), 1st Dist. Nos. C-810203 and C-810270.
[6] Akron v. Milewski (1985), 21 Ohio App.3d 140, 487 N.E.2d 582;State v. Karns (1992), 80 Ohio App.3d 199, 608 N.E.2d 1145.
[7] 86 Ohio St.3d 208, 1999-Ohio-95, 714 N.E.2d 381.
[8] Id. at 210, quoting State ex rel. Jones v. Farrar (1946),146 Ohio St. 467, 66 N.E.2d 531, paragraph three of the syllabus.
[9] Id.
[10] Id., quoting State ex rel. Harrell v. Streetsboro Bd. ofEdn. (1989), 46 Ohio St.3d 55, 63, 544 N.E.2d 924, and In re Davis
(1999), 84 Ohio St.3d 520, 522, 705 N.E.2d 1219.
[11] Id. at 210-211.
[12] Id.
[13] State v. Hurst, 2nd Dist. No. 20435, 2005-Ohio-128, at ¶ 6; see, also, State v. Webb, 9th Dist. No. 06CA008875, 2006-Ohio-5476; State v.Imler, 10th Dist. No. 04AP-1246, 2005-Ohio-4241.
[14] State v. Wilson, 113 Ohio St.3d 382, 2007-Ohio-2202,865 N.E.2d 1264, syllabus. *Page 1