[Cite as *State v. Thomas*, 2013-Ohio-5386.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-120561 |
| | | TRIAL NO. B-1106802B |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| | | |
| ANDRE THOMAS, | : | |
| | | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed in Part, Sentences Vacated in Part, and
  Cause Remanded

Date of Judgment Entry on Appeal:  December 11, 2013

*Joseph T. Deters*, Hamilton County Prosecuting Att0rney, and *Judith Anton Lapp*,
Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Roger W. Kirk*, for Defendant-Appellant.

Please note:  this case has been removed from the accelerated calendar.

**DINKELACKER, Judge.**

{¶1} Defendant-appellant Andre Thomas appeals his convictions for murder under R.C. 2903.02(A) with an accompanying firearm specification, having weapons while under a disability under R.C. 2923.13(A)(2), and improperly discharging a firearm into a habitation or school safety zone under R.C. 2923.161(A) with an accompanying firearm specification. We find merit in one of his nine assignments of error, and we, therefore, affirm the findings of guilt, but we remand the matter for resentencing.

## I.    Factual Background

{¶2} The record shows that Michael Lavender was a "robbery boy," who hired himself out to commit crimes for others. In 2011, Thomas hired Lavender on several occasions to rob or shoot certain individuals and paid him "$500 here, $500 there."

{¶3} On September 25, 2011, Thomas called Lavender and instructed him to kill an unnamed man. Thomas told him, "the dude answer the door, kill him." Thomas picked up Lavender in a white Toyota and gave him a long revolver. Two other men, Baby Boy and Fat Jeff, were also passengers in the car. Thomas drove to the Cumminsville area and dropped Lavender off at a house on Pulte Street. He told Lavender that when a man opened the front door, to "light his ass up."

{¶4} Lavender knocked on the door, and Jermaine, Thomas's brother, opened it. Jermaine lived in the house with his and Thomas's mother. Immediately, Lavender realized that he knew the man. Jermaine, who was older than Lavender, knew Lavender's father and had often given Lavender drinks or snacks from a neighborhood store when he was a child.

{¶5}   Lavender could not bring himself to kill Jermaine, so instead he lied and told Jermaine that he had been robbed.  Jermaine asked him to lift up his shirt to show that he had no weapons, and offered to call someone for help.  When Jermaine looked up from his cell phone, Lavender showed him the revolver.  "I let him see it so he could make it up the steps, then I shot at the side of the doors."  After shooting three or four times, he ran from the house and hid in some bushes until Thomas came to get him.

{¶6}   Jermaine knew Lavender as "Duke."  Jermaine did not call the police about the shooting, although he did tell his mother about it.  When questioned by the police, he said that it was a family situation and that he would handle it on his own.  He later sent Thomas a number of texts, indicating that he knew what Thomas had done and threatening him.  At trial, Jermaine denied knowing the man who had shot at the door.  He admitted to sending threatening texts to Thomas, but said they were over money Thomas owed him and other things.

{¶7}   Lavender told Thomas that he had shot Jermaine as ordered.  Thomas dropped Lavender off in the West End and left.  Thomas, along with Fat Jeff and another individual, returned when he realized Jermaine was still alive.  Thomas threatened Lavender, but then ordered him to shoot another man.  He gave Lavender another gun and dropped him off at 15th and Vine Streets with orders to "shoot the tallest dude."  Lavender told the police that he had shot the tall man, who he knew as "Snake."  Snake was later identified as Anthony Wells.

{¶8}   At trial, though, Lavender testified that he got out of Thomas's car and saw two tall men.  He did not know which one to shoot, and he hesitated while trying to decide.  According to Lavender, Thomas got frustrated because Lavender had not shot anyone, so Thomas shot from inside the car at Snake.  Snake fell, and as Lavender ran away from the scene, Fat Jeff shot at him and Lavender shot back.

3

Eyewitnesses at the scene saw an individual matching Lavender's description run from the scene. They also saw two other men shooting at him as he ran.

{¶9} About a half hour before Wells had been shot, Denise Thomas, Jermaine's mother, approached Cincinnati Police Sergeant Christian Taylor as he patrolled the area. Denise Thomas was angry and upset about Lavender shooting into her house. Sergeant Taylor put out a broadcast asking police to look for Thomas and Lavender, known as "Big Duke." Within a half hour, Sergeant Taylor was notified about the shooting of Wells.

{¶10} The police investigating Wells's murder eventually focused on Thomas and Lavender as suspects. They were able to place Thomas near the scene of Wells's murder through the use of cell phone records. They also discovered that Wells's murder was related to the shooting of Jermaine. They subsequently interviewed Thomas and Lavender, and Lavender gave an extensive statement to the police.

{¶11} Mario Gordon shared a cell with Thomas at the Hamilton County Justice Center after Thomas's arrest. Gordon contacted police with information about Wells's murder. Gordon told police that Thomas had stated that he had warned Snake that he was going to kill Snake when he saw him. Thomas also said that he had told "the little fat dude" to kill Snake if he saw him, and he bragged that the police "had nothing on him."

{¶12} After hearing all of the evidence, a jury found Thomas guilty of two counts of murder, one count of felonious assault, one count of having weapons while under a disability, and one count of discharging a firearm into a habitation or school safety zone. The trial court merged the two murder counts and merged the count of felonious assault with the count for discharging a firearm into a habitation or school

safety zone. The court then sentenced Thomas on the remaining three counts. This appeal followed.

## II. Batson Challenge

{¶13} In his first assignment of error, Thomas contends that the trial court erred by overruling his challenge under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), to the state's use of a peremptory challenge to exclude an African-American juror from the jury panel. He argues that the trial court should not have permitted the state to exclude the juror without a race-neutral reason. This assignment of error is not well taken.

{¶14} In *Batson*, the United States Supreme Court held that the Equal Protection Clause of the United States Constitution precludes purposeful discrimination by the state in the exercise of its peremptory challenges so as to exclude members of minority groups from petit juries. *State v. O'Neal*, 87 Ohio St.3d 402, 409, 721 N.E.2d 73 (2000); *State v. Murray*, 156 Ohio App.3d 219, 2004-Ohio-654, 805 N.E.2d 156, ¶ 7 (1st Dist.). *Batson* established a three-step procedure for evaluating claims of racial discrimination in the use of peremptory challenges. *State v. White*, 85 Ohio St.3d 433, 436, 709 N.E.2d 140 (1999); *Murray* at ¶ 7.

{¶15} First, the opponent of a peremptory strike must make a prima facie showing of discrimination. Second, the proponent of the strike must give a race-neutral explanation for the strike. *State v. Herring*, 94 Ohio St.3d 246, 255-256, 762 N.E.2d 940 (2002). The state's reason is deemed to be race-neutral unless discriminatory intent is inherent in the explanation. *Murray* at ¶ 8.

{¶16} Third, the trial court must determine whether, under all the circumstances, the opponent has proven purposeful discrimination. The burden of persuasion always stays with the opponent of the strike. A reviewing court will defer

to the trial court's finding that no discriminatory intent existed since it turns largely on an evaluation of credibility. *Herring* at 256; *Murray* at ¶ 9. The reviewing court may only reverse a trial court's finding if that finding is "clearly erroneous." *State v. Nixon*, 1st Dist. Hamilton No. C-020428, 2003-Ohio-3384, ¶ 19, quoting *Hernandez v. New York*, 500 U.S. 352, 369, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991).

{¶17} The juror stated that his children went to the same school as the children of defense counsel. While he said that he would not describe his relationship with defense counsel as a friendship, he noted that "[w]e see each other in passing at different school events." In exercising a peremptory challenge against the juror, the prosecutor explained that it concerned him that the juror had "a personal connection with [defense counsel], which could potentially cause him to side with him in the case." The trial court overruled Thomas's objection to the use of that peremptory challenge.

{¶18} The prosecutor provided a race-neutral reason for the use of the challenge. The explanation need not rise to the level justifying the exercise of a challenge for cause. *O'Neal*, 87 Ohio St.3d at 409, 721 N.E.2d 73; *Murray*, 156 Ohio App.3d 219, 2004-Ohio-654, 805 N.E.2d 156, at ¶ 8. The trial court's acceptance of this race-neutral reason was not clearly erroneous, and Thomas has not met his burden to show discriminatory intent. Therefore, we overrule his first assignment of error.

### III.   Other-Acts Evidence

{¶19} In his second assignment of error, Thomas contends that the trial court erred in allowing other-acts testimony into evidence. He argues that the other-acts evidence was irrelevant and prejudicial. This assignment of error is not well taken.

{¶20} Generally, the prosecution in a criminal case may not present evidence that the defendant has committed other crimes or acts independent of the crime for which the defendant is being tried to establish that the defendant acted in conformity with his bad character. Evid.R. 404(B); *State v. Brown*, 1st Dist. Hamilton No. C-120327, 2013-Ohio-2720, ¶ 26. But Evid.R. 404(B) provides that other bad acts are admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *State v. Shedrick*, 61 Ohio St.3d 331, 337, 574 N.E.2d 1065 (1991); *Brown* at ¶ 26.

{¶21} Because Evid.R. 404(B) codifies an exception to the general rule, it must be strictly construed against admissibility. *State v. Coleman*, 45 Ohio St.3d 298, 299, 544 N.E.2d 622 (1989); *State v. Hirsch*, 129 Ohio App.3d 294, 306, 717 N.E.2d 789 (1st Dist.1998). Nevertheless, the other acts need not be similar to the crime at issue. If the other acts tend to show by substantial proof any of the items enumerated in Evid.R. 404(B), evidence of the other acts is admissible. *Coleman* at 299-300; *Hirsch* at 306.

{¶22} First, Thomas contends that the trial court should not have allowed Lavender to testify that he and Thomas had been involved in other shootings. Lavender testified that he worked as a "robbery boy" and that he hired himself out to commit robberies. Lavender said that he knew Thomas because he had committed robberies and other crimes for him. Thomas failed to object to this testimony, which precludes him from raising the issue on appeal unless it rises to the level of plain error. *State v. Underwood*, 3 Ohio St.3d 12, 13, 444 N.E.2d 1332 (1983); *State v. Brundage*, 1st Dist. Hamilton No. C-030632, 2004-Ohio-6436, ¶ 25.

{¶23} Lavender's testimony put Lavender's and Thomas's relationship in context and provided background for the crimes with which Thomas was

charged. Lavender did not go into any detail about the other crimes. The other-acts evidence was "inextricably interwoven" with the crimes charged in the indictment and was "necessary to give a complete picture of what occurred." *See State v. Kendrick*, 1st Dist. Hamilton No. C-080509, 2009-Ohio-3876, ¶ 24, quoting *State v. Wilkinson*, 64 Ohio St.2d 308, 317-318, 415 N.E.2d 261 (1980). It also showed Thomas's motive and intent in hiring Lavender. Under the circumstances, we cannot hold that the trial court erred in admitting the testimony much less that it rose to the level of plain error. *See State v. Wickline*, 50 Ohio St.3d 114, 119-120, 552 N.E.2d 913 (1990); *Hirsch*, 129 Ohio App.3d at 309, 717 N.E.2d 789.

{¶24} Thomas further contends that the trial court should not have allowed into evidence statements to the effect that police detectives told Lavender that Thomas was incarcerated, that he had been involved with two other shootings, and that he "was a bad dude." Again, Thomas did not object to this testimony. In fact, defense counsel raised the issue in an attempt to show that the police had suggested Thomas's guilt to Lavender before Lavender implicated Thomas. Therefore, it was arguably invited error. *See State v. Eichelbrenner*, 1st Dist. Hamilton No. C-110413, 2013-Ohio-1194, ¶ 14-16.

{¶25} Further, the evidence was used to show how the police obtained a statement from Lavender and it was "not wholly independent" of the charged offenses. Under the circumstances, we cannot hold that any error in the admission of this testimony rose to the level of plain error. *See Wickline* at 119-120; *Hirsch*, 129 Ohio App.3d at 309, 717 N.E.2d 789. Consequently, we overrule Thomas's second assignment of error.

### IV. Impeachment of the State's Own Witness

{¶26}   In his third assignment of error, Thomas contends that the trial court erred in allowing the state to impeach its own witness with leading questions and references to an unsworn statement.   He argues that the state failed to show surprise and affirmative damage.   This assignment of error is not well taken.

{¶27}   Under Evid.R. 607(A), the party calling a witness may attack the witness's credibility by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage.   *State v. Hancock*, 1st Dist. Hamilton No. C-030459, 2004-Ohio-1492, ¶ 36.   Counsel may show surprise if the witness's trial testimony is materially inconsistent with the witness's prior statements, and counsel had no reason to believe that the witness would recant when called to testify.   *State v. Holmes,* 30 Ohio St.3d 20, 23, 506 N.E.2d 204 (1987); *Hancock* at ¶ 37.   Surprise is a factual issue left to the trial court's discretion.   *State v. Diehl*, 67 Ohio St.2d 389, 390-391, 423 N.E.2d 1112 (1981); *State v. Seay*, 1st Dist. Hamilton No. C-040763, 2005-Ohio-5964, ¶ 43.   Affirmative damage occurs when the witness testifies to facts that contradict, deny, or harm the party's trial position.   *Hancock* at ¶ 37; *Seay* at ¶ 43.

{¶28}   Lavender had originally told the police that he had killed Wells on Thomas's order.   At trial, he stated that because he had hesitated in killing Wells, Thomas had shot Wells, a story which he had told before a previous, different trial date.   Upon hearing Lavender's trial testimony, the prosecutor said that she was "in complete surprise at this time."   She stated that police detectives had had "a lengthy conversation" with Lavender prior to trial and that Lavender had been in "constant contact with his attorney."   She further stated, "I've been told this morning, and he

was, even prior to coming here today, I was assured he's cooperating to be truthful and consistent with this original statement."

{¶29} Finally, she said that "now that he's here, he's referring back to a different story which he purported to give us right before the last trial date and was confronted with by the detective and his attorney and admitted it was not the truth, that the first story was the truth, and that was the consistent story." She continued, "so somehow he's here on the stand, I am surprised that this is a version of events that he is telling the jury." She, therefore, wanted to cross-examine him using his original statement to the police.

{¶30} Thomas objected, stating that Lavender had given "a total of about three or four versions that have transpired, and all of these versions have been given to law enforcement, and the State of Ohio, through the prosecutor's office, is aware of all four of these different versions of what happened." The trial court overruled the objection, declared Lavender a hostile witness, and allowed the prosecution to cross-examine him about his previous statement to the police.

{¶31} The trial court's decision to accept the prosecutor's explanation and to find that the state had demonstrated surprise was not so arbitrary, unreasonable or unconscionable as to connote an abuse of discretion. *See State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032, ¶ 130. Even if we were to find error, the error was harmless. *See State v. Bayless*, 48 Ohio St.2d 73, 357 N.E.2d 1035 (1976), paragraph seven of the syllabus, *vacated as to death penalty*, 438 U.S. 911, 95 S.Ct. 3135, 57 L.Ed.2d 1155 (1978); *State v. Williams*, 1st Dist. Nos. C-060631 and C-060668, 2007-Ohio-5577, ¶ 39. Whether Lavender shot Wells at Thomas's direction or whether Thomas shot Wells himself, Thomas was still culpable for his death. Further, Thomas knew of the inconsistent statements and used them to

attack Lavender's credibility. Consequently, we overrule Thomas's third assignment of error.

### V. Search and Seizure/Waiver

{¶32} In his fourth assignment of error, Thomas contends that the trial court erred in admitting his voice mail and text messages into evidence. He argues that the state procured the messages from his cell phone without a warrant in violation of his Fourth Amendment rights. This assignment of error is not well taken.

{¶33} We note that Thomas filed a motion to suppress and subsequently withdrew it, so we treat it as if it had never been filed. Thomas, therefore, waived any error but plain error. *State v. Ojile*, 1st Dist. Hamilton Nos. C-110677 and C-110678, 2012-Ohio-6015, ¶ 74; *State v. Shelton*, 1st Dist. Hamilton Nos. C-060789 and C-060790, 2007-Ohio-5460, ¶ 4-5.

{¶34} Thomas argues that "it is not apparent in the record that the police obtained a warrant to seize and search the content of Andre Thomas' cell phone and text messages" between him and Jermaine, as well as alleged communications between Thomas and Lavender. He further argues that "[i]t is not apparent in the record that Andre was under arrest at the time his cell phone was seized and content searched, or that there were exigent circumstances * * * or that Andre ever consented to the seizure and search of his cell phone." The reason these things are not "apparent in the record" is that Thomas withdrew his motion to suppress and a record was never developed. Thomas was required under Civ.R. 47 to set forth the basis of his challenge and refer to facts which, if proved, would have required relief. *See State v. Bates*, 1st Dist. Hamilton No. C-040698, 2005-Ohio-3394, ¶ 17, quoting *Xenia v. Wallace*, 37 Ohio St.3d 216, 218, 524 N.E.2d 889 (1988). He further

contends that he objected to the admission of this evidence, but the record shows that he did not object on Fourth Amendment grounds.

{¶35} Thomas has not shown that but for the introduction of the messages from his cell phone, the results of the proceeding would have been otherwise. Therefore, any error did not rise to the level of plain error, and we overrule Thomas's fourth assignment of error. *See Wickline*, 50 Ohio St.3d at 119-120, 552 N.E.2d 913; *Hirsch*, 129 Ohio App.3d at 309, 717 N.E.2d 789.

### *VI. Prosecutorial Misconduct*

{¶36} In his fifth assignment of error, Thomas contends that he was denied due process of law by the prosecutor's misconduct. He argues that the prosecutor improperly elicited testimony about Thomas's text messages and other bad acts, questioned a state's witness knowing the witness had violated the court's order for separation of witnesses, and made improper comments during opening statement and closing argument. This assignment of error is not well taken.

{¶37} Prosecutors are normally entitled to wide latitude in their remarks. *State v. Mason*, 82 Ohio St.3d 144, 162, 694 N.E.2d 932 (1998); *State v. Lukacs*, 188 Ohio App.3d 597, 2010-Ohio-2364, 936 N.E.2d 506, ¶ 55 (1st Dist.). The test for prosecutorial misconduct is (1) whether the remarks were improper, and (2) if so, whether the remarks affected the accused's substantial rights. *State v. Lott*, 51 Ohio St.3d 160, 165, 555 N.E.2d 293 (1990); *Lukacs* at ¶ 55. The conduct of the prosecuting attorney cannot be grounds for error unless it deprives the defendant of a fair trial. *State v. Keenan*, 66 Ohio St.3d 402, 405, 613 N.E.2d 203 (1993); *Lukacs* at ¶ 55.

{¶38} The record shows that Thomas failed to object to many of the comments he now claims were improper or that he objected on an unrelated basis.

12

Thus, he cannot raise those issues on appeal unless they rise to the level of plain error. *See Underwood*, 3 Ohio St.3d at 13, 444 N.E.2d 1332; *Lukacs* at ¶ 56. Our review of the record shows that most of the instances of which Thomas complains were not improper. Even if some of the comments were improper, none were so egregious as to affect his substantial rights or to deny him a fair trial, much less rise to the level of plain error. *See State v. Burrell*, 1st Dist. Hamilton No. C-030803, 2005-Ohio-34, ¶ 26; *Hirsch*, 129 Ohio App.3d at 309-310, 717 N.E.2d 789. Therefore, we overrule Thomas's fifth assignment of error.

### *VII. Indictment*

{¶39} In his seventh assignment of error, Thomas contends that the trial court erred "by entering a conviction for assault when the state failed to amend the indictment from the initials 'JT' to [m]atch the court's jury instruction for firing a weapon into a habitation stating the name of the alleged victim 'Jermaine Thomas' rather than 'JT.' " He argues that because the state failed to amend the indictment from stating the initials of the alleged victim to match the jury instructions, prejudicial error occurred. This assignment of error is not well taken.

{¶40} Under the United States and Ohio Constitutions, an individual accused of a felony is entitled to an indictment setting forth the "nature and cause of the accusation." *State v. Sellards*, 17 Ohio St.3d 169, 170, 478 N.E.2d 781 (1985); *Lukacs*, 188 Ohio App.3d 597, 2010-Ohio-2364, 936 N.E.2d 506, at ¶ 41. The government must aver all material facts constituting the essential elements of the offense so that the accused not only has adequate notice and an opportunity to defend, but also may protect himself from any future prosecution for the same offending conduct. *Sellards* at 170; *Lukacs* at ¶ 41. But the indictment need not

contain a recitation of the evidence supporting the various facts. *Sellards* at 170-171; *Lukacs* at ¶ 41.

{¶41} The record shows that the third count of the indictment for felonious assault stated that Thomas and Lavender had knowingly caused or attempted to cause physical harm to "J.T." The fourth count for improperly discharging a firearm at or into a habitation stated that Lavender and Thomas had discharged a firearm into an occupied structure that was the permanent or temporary habitation of "J.T."

{¶42} In discussing the jury instructions on count 3, felonious assault, the court asked the state, "Do you still want it to read JT?" The prosecutor said, "No," and the court asked if the state needed to amend the indictment. The prosecutor answered, "I don't think we do. I think it's understood who it is." The court replied, "The initials are for the person. Okay. I just think it's clearer if – we know it is instead of using initials." Thomas did not object. Subsequently, in instructing the jury on counts three and four of the indictment, the court used the victim's full name, Jermaine Thomas.

{¶43} The name of the victim is not required in the indictment when the identity of the victim is not an essential element of the crime. *State v. Hilbert*, 2d Dist. Miami No. 2013 CA 2, 2013-Ohio-4728, ¶ 19; *State v. Hills*, 8th Dist. Cuyahoga No. 98848, 2013-Ohio-2902, ¶ 4; *State v. Jewett*, 10th Dist. Franklin No. 11AP-1028, 2013-Ohio-1246, ¶ 101. Even if it were an essential element, the indictment used the statutory language and the identity of the victim was not at issue. Jermaine testified at trial, and nothing in the record shows that Thomas was unaware of the victim's identity in counts 3 and 4 of the indictment, or that the jury was confused in any way by the jury instructions using the victim's full name. *See State v. Oliver*, 32 Ohio St.2d 109, 112, 290 N.E.2d 828 (1972); *Hilbert* at ¶ 19; *State v. Moss*, 1st Dist. Hamilton No. C-840870, 1985 Ohio App. LEXIS 8785, *5-6 (Oct. 9, 1985).

14

Consequently, we find no error by the trial court, and we overrule Thomas's seventh assignment of error.

### VIII.     Weight and Sufficiency

{¶44}   In his ninth assignment of error, Thomas contends that the evidence was insufficient to support his convictions for murder with a firearm specification, having a weapon under a disability and improperly discharging a firearm into a habitation with a firearm specification.  He also argues that those convictions were against the manifest weight of the evidence.  This assignment of error is not well taken.

{¶45}   Thomas argues that no physical evidence connected him to the shooting at Jermaine Thomas's residence or Wells's murder.  But no rule of law exists that a witness's testimony must be corroborated by physical evidence.  *Lukacs*, 188 Ohio App.3d 597, 2010-Ohio-2364, 936 N.E.2d 506, at ¶ 58.  Thomas further argues that the state's evidence was not credible.  But in deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of the witnesses.  *State v. Jones*, 1st Dist. Hamilton Nos. C-120570 and C-120571, 2013-Ohio-4775, ¶ 33.

{¶46}   Specifically, Thomas argues that the evidence was insufficient to prove that he was guilty of improperly discharging a firearm into a habitation.  R.C. 2923.161(A)(1) requires proof that the defendant "without privilege do so, knowingly * * * discharge[d] a firearm at or into an occupied structure that is a permanent or temporary habitation of any individual."  This court has stated that "[t]he plain language of the statute indicates that the proscribed conduct of 'discharging a firearm' must occur from outside the dwelling that is fired 'at or into.' "  State *v. Moorer*, 176 Ohio App.3d 398, 2008-Ohio-2560, 891 N.E.2d 1295, ¶ 4 (1st Dist.).

15

Thomas contends that the evidence showed that Lavender was inside Jermaine's house when he shot the doors. But Lavender specifically testified that he had "shot the outside of the doors." Thomas is simply contesting his credibility in making that statement.

{¶47} Our review of the record shows that a rational trier of fact, after viewing the evidence in a light most favorable to the prosecution, could have found that the state proved beyond a reasonable doubt all of the elements of murder under R.C. 2903.02(A), having weapons while under a disability under R.C. 2923.13(A)(2), improperly discharging a firearm at or into a habitation under R.C. 2923.161(A), and all of the accompanying firearm specifications. Therefore, the evidence was sufficient to support the convictions. *See State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *Ojile*, 2012-Ohio-6015, at ¶ 48.

{¶48} Similarly, after reviewing the record, we cannot say that the trier of fact lost its way and created such a manifest miscarriage of justice that we must reverse Thomas's convictions and order a new trial. Therefore, the convictions were not against the manifest weight of the evidence. *See State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *State v. Blair*, 1st Dist. Hamilton Nos. C-100150 and C-100151, 2010-Ohio-6310, ¶ 24. Again, Thomas primarily argues that the state's evidence was not credible, but matters as to the credibility of evidence are for the trier of fact to decide. *State v. Bryan*, 101 Ohio St.3d 272, 2004-Ohio-971, 804 N.E.2d 433, ¶ 116; *Ojile*, 2012-Ohio-6015, at ¶ 59. Consequently, we overrule Thomas's ninth assignment of error.

### IX. Ineffective Assistance of Counsel

{¶49} In his sixth assignment of error, Thomas contends that he was denied the effective assistance of counsel. He argues that defense counsel was ineffective for

(1) failing to object to the prosecutor's improper closing argument, (2) failing to object to the testimony of a state's witness who violated the court's order for separation of witnesses, (3) failing to object to the other-acts evidence, (4) failing to object to a jury instruction that did not match the victim's name in the indictment, (5) withdrawing the motion to suppress evidence of Thomas's cell-phone data, (6) failing to file a motion to suppress identification evidence, and (7) failing to make a Crim.R. 29 motion for a judgment of acquittal on the having-weapons-while-under-a-disability charge when the state failed to present evidence of Thomas's conviction in a prior case. This assignment of error is not well taken.

{¶50} A court will presume that a properly licensed attorney is competent, and the defendant bears the burden to show ineffective assistance of counsel. *State v. Hamblin*, 37 Ohio St.3d 153, 155-156, 524 N.E.2d 476 (1988); *State v. McCrary*, 1st Dist. Hamilton No. C-080860, 2009-Ohio-4390, ¶ 12. To sustain a claim for ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient, and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *McCrary* at ¶ 12.

{¶51} To establish that counsel's performance was deficient, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Strickland* at 687-688; *Hirsch*, 129 Ohio App.3d at 314, 717 N.E.2d 789. Judicial scrutiny of counsel's performance must be highly deferential. The defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Strickland* at 689; *Hirsch* at 314. A defendant is not deprived of effective assistance of counsel when counsel chooses, for strategic reasons, not to pursue every possible trial tactic. *State v. Brown*, 38 Ohio St.3d 305, 319, 528 N.E.2d 523 (1988).

17

{¶52} To establish prejudice, a defendant mush show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland* at 694; *Hirsch* at 314. Prejudice from defective representation sufficient to justify reversal of a conviction exists only where the result of the proceeding was unreliable or fundamentally unfair because of counsel's performance. *Lockhart v. Fretwell*, 506 U.S. 364, 369-370, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993); *State v. Carter*, 72 Ohio St.3d 545, 558, 651 N.E.2d 965 (1995).

{¶53} We have already rejected many of the arguments that Thomas raises in this assignment of error. The failure to file or prosecute a motion would be prejudicial only if the defendant had a reasonable probability of success on that motion. *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, 873 N.E.2d 858, ¶ 65; *McCrary* at ¶ 13. We cannot conclude on the record before us that the motion to suppress would have been successful. Similarly, counsel's failure to make objections is not, by itself, enough to sustain a claim of ineffective assistance of counsel. *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 168; *State v. Trusty*, 1st Dist. Hamilton Nos. C-120378 and C-120386, 2013-Ohio-3548, ¶ 60.

{¶54} Many of the alleged instances of counsel's deficient performance reasonably fell within the realm of valid trial strategy. Further, Thomas generally asserts that all the enumerated instances of his counsel's alleged deficient performance "affected the outcome of the trial since Thomas was convicted of all charges and the trial court imposed severe maximum consecutive sentences. But for trial counsel's errors, the result of the trial would have surely been an acquittal." We disagree. Given the quantum of evidence against Thomas, we cannot hold that the result of the proceeding would have been different or that the result of the proceeding was unreliable or fundamentally unfair. Consequently, Thomas has

failed to meet his burden to show ineffective assistance of counsel, and we overrule his sixth assignment of error.

### X.  Sentencing

{¶55}   In his eighth assignment of error, Thomas contends that the trial court erred in imposing sentence.  He argues that the trial court failed to follow the statutory requirements when imposing the sentences.  This assignment of error is well taken.

{¶56}   First, Thomas contends that the trial court erred in imposing consecutive sentences without making the findings required by R.C. 2929.14(C).  The General Assembly has revived the requirement that a trial court make certain findings before imposing consecutive sentences.  *State v. Chapman*, 1st Dist. Hamilton Nos. C-120645, C-120646, C-120647 and C-120648, 2013-Ohio-2161, ¶ 3; *State v. Erkins*, 1st Dist. Hamilton No. C-110675, 2012-Ohio-5372, ¶ 56.  R.C. 2929.14(C) now requires the court to engage in a three-step analysis and make certain findings before imposing consecutive sentences.  *Chapman* at ¶ 3.  While the court need not use "talismanic words," it must be clear from the record that the trial court actually made the findings required by the statute.  *Erkins* at ¶ 56.

{¶57}   In this case, the record does not show that the court made the required findings before imposing consecutive sentences.  Consequently, we hold that the consecutive sentences are clearly and convincingly contrary to law.  *See State v. Bohannon*, 1st Dist. Hamilton No. C-130014, 2013-Ohio-5101, ¶ 5; *Chapman* at ¶ 5; *Erkins* at ¶ 57.  We, therefore, vacate the consecutive sentences and remand the matter to the trial court to make the appropriate findings.

{¶58}   Next, Thomas argues that the trial court failed to inform him that court costs may be paid through community service as required by R.C. 2947.23(A).

The Ohio Supreme Court has held that a sentencing court's failure to notify the defendant of the possibility that it could order the defendant to perform community service in lieu of paying court costs as required by R.C. 2947.23(A) is ripe for review on direct appeal regardless of whether the defendant has failed to pay the costs. *State v. Smith*, 131 Ohio St.3d 297, 2012-Ohio-781, 964 N.E.2d 423, syllabus; *State v. Harris*, 1st Dist. Hamilton No. C-120531, 2013-Ohio-2721, ¶ 8. The proper remedy for a trial court's failure to comply with R.C. 2947.23(A) when imposing costs is to vacate the imposition of costs and remand the case for proper community-service notification. *Harris* at ¶ 8.

{¶59}    The trial court imposed court costs without notifying Thomas of the possibility of community service in lieu of paying costs. Therefore, we vacate that portion of the trial court's judgment imposing court costs, and we remand the cause to the trial court to properly notify Thomas as required by R.C. 2947.23(A) when imposing costs.

{¶60}    Thomas also contends that the trial court erred in sentencing him to serve five years of postrelease control. We agree. Postrelease control does not apply to sentences for murder. *State v. Robbins*, 1st Dist. Hamilton No. C-120107, 2013-Ohio-612, ¶ 21. The remaining convictions were second-degree and third-degree felonies, which carry a mandatory term of three years of postrelease control. R.C. 2967.28(B). We conclude that the trial court erred in notifying Thomas of the incorrect length of postrelease control. We, therefore, remand the matter to the trial court to correctly notify Thomas that he will be subject to three years of postrelease control. *See id.*

{¶61}    Finally, Thomas contends that the sentences were excessive. The sentences were in the appropriate statutory ranges. *See* R.C. 2929.14(A)(2) and (3). The length of the sentences was supported by the record, and we can presume from a

silent record that the trial court considered the appropriate factors unless the defendant affirmatively shows that the court has failed to do so. *Bohannon*, 2013-Ohio-5101, ¶ 6-7.

{¶62} Consequently, we sustain in part and overrule in part Thomas's eighth assignment of error. We vacate that part of the trial court's judgment imposing consecutive sentences, court costs and postrelease control. We remand the matter to the trial court to make the findings necessary for the imposition of consecutive sentences, to properly inform Thomas about community service in lieu of court costs, and to notify Thomas of the proper term of postrelease control. We affirm the trial court's judgment in all other respects.

Judgment affirmed in part, sentences vacated in part, and cause remanded.

**CUNNINGHAM, P.J.,** and **DEWINE, J.,** concur.

Please note:

The court has recorded its own entry this date.