[Cite as *State v. Hughes*, 2024-Ohio-934.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-230239 |
| | | TRIAL NO. 23CRB-815B |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| CLEON HUGHES, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry: March 15, 2024

*Emily Smart Woerner,* City Solicitor, *William T. Horsley*, Chief Prosecuting Attorney, and *Joshua Loya*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller,* Hamilton County Public Defender, and *Krista Gieske*, Assistant Public Defender, for Defendant-Appellant.

**WINKLER, Judge.**

{¶1}   In this criminal appeal, defendant-appellant Cleon Hughes appeals his misdemeanor conviction for having a weapon while intoxicated in violation of R.C. 2923.15.  Hughes raises two assignments of error, arguing that the trial court erred in admitting the writing on the envelope holding his handgun as substantive evidence of the offense and that his conviction was based on insufficient evidence and against the manifest weight of the evidence.  For the following reasons, we overrule the assignments of error and affirm Hughes's conviction.

## Background

{¶2}   Cleon Hughes, Anita Lewis, his long-time paramour, and Lewis's children were being evicted from their home.  While others helped the Lewis family move, Hughes spent the day visiting family members to find a place to store his property.  At 9:00 p.m. that night, Hughes returned to the house.  Jessie Marie Holtmann is a friend of Lewis, and she and her children were at Lewis's house to help with the move.  She thought Hughes had returned to the house drunk as he had been swaying back and forth.  Holtmann testified that Hughes began yelling at Lewis, who yelled back, as the dispute moved to the fenced-in backyard.  Hughes yelled, insulted, and threatened Lewis.  She screamed at him to leave her alone.

{¶3}   Lewis fled from the fenced-in backyard through the house and left. Hughes entered the house and started throwing items out on the sidewalk while swearing.  One of the children who lived at the house implored Hughes to stop throwing things out of the house.  Hughes replied by threatening to beat the child and the whole Lewis family.  Hughes also threatened to shoot someone, though it is unclear

2

who. Holtmann fled from the house with her children and the police were called to the house shortly thereafter.

{¶4} Cincinnati Police Officers Friedman and Shaw arrived at the house. Officer Friedman smelled a slight odor of alcohol on Hughes's breath and observed that Hughes swayed, his hand-eye coordination seemed impaired, and he slurred his speech. Based on these observations, Officer Friedman later testified that Hughes was intoxicated. Officer Shaw asked Hughes whether he had anything of concern on him and Hughes admitted to carrying a holstered handgun. Hughes lifted his jacket to show the officers his Taurus PT111 G2A 9 mm handgun. Hughes told the officers that if he wanted to shoot Lewis, he would have done so. The officers then confiscated the handgun and arrested Hughes for having a firearm while intoxicated as well as domestic violence and aggravated menacing.

{¶5} After the arrest, Officers Shaw and Friedman completed a firearm report, a standard police form inventorying the seized handgun, and a query as to whether Hughes's handgun was in a national firearm database. When Officer Shaw went to test-fire the handgun, he asked Officer Friedman to walk him through the test-fire procedure. Officer Friedman was off duty, so he helped Officer Shaw over the phone. Officer Friedman guided Officer Shaw on how to complete the test-fire report. Officer Shaw reported that he was about to fire Hughes's gun and then Officer Friedman heard a gunshot over the phone. Officer Shaw reported that the gun successfully fired. No report detailing the results of the test-firing was presented at trial. The handgun, a spent test-fire cartridge case, two dozen 9 mm cartridges, and two magazines were placed in an envelope with the firearm report and the envelope was marked with identifying information. The only writing indicating a test-fire

3

occurred was on the outside of the envelope holding Hughes's handgun, which read "☑ Test Fired Date: 01-15-23 By: PO B Shaw."

**{¶6}** Hughes was tried to the court. At trial, Holtmann and Officer Friedman testified. Officer Shaw did not testify, so Officer Friedman was the state's sole witness to testify to the operability of Hughes's firearm. After Officer Friedman described the test-fire he heard over the phone, the state sought to admit the envelope, the writing on the envelope, Hughes's handgun, the two magazines, the spent test-fire cartridge case, and the two dozen 9 mm cartridges altogether as Exhibit 2. The court admitted Exhibit 2 without objection. The court had the writing on the envelope photocopied and marked as Exhibit 2 to serve as a representation of the actual envelope. The actual envelope and its contents were returned to the property room.

**{¶7}** Hughes took the stand in his own defense. He admitted to carrying a holstered handgun that night. Hughes testified that he had diabetes and that a test taken after his arrest reported his blood sugar was at 350. Hughes said his normal blood-sugar range was 120. He attempted to opine that his high blood sugar would affect his speech, but he was thwarted by a timely objection. Hughes also testified that he suffered from several injuries to his leg: a torn ACL, torn PCL, and a broken patella and he required something to help him stand. No expert medical testimony was introduced explaining the physiological effect of Hughes's purported high blood sugar or leg injuries. The trial court dismissed the charges for domestic violence and aggravated menacing but found Hughes guilty of having a firearm while intoxicated. Hughes now appeals.

## Law and Analysis

### I. Admission of the envelope, the writing on it, and its contents.

{¶8}   In his first assignment of error, Hughes argues the trial court committed plain error by admitting into evidence the envelope containing his firearm, its contents, and the writing on the outside of the envelope altogether as Exhibit 2.

{¶9}   Though a trial court's evidentiary ruling is ordinarily reviewed for an abuse of discretion, because Hughes did not object to the exhibit at trial, we may review only for plain error. *State v. Bond*, 170 Ohio St.3d 316, 2022-Ohio-4150, 212 N.E.3d 880, ¶ 8.  To prevail under the plain-error doctrine, Hughes must show that (1) an error occurred, (2) that the error was obvious, and (3) that there is a reasonable probability that the error resulted in prejudice, meaning that the error affected the outcome of the trial. *State v. Bailey*, 171 Ohio St.3d 486, 2022-Ohio-4407, 218 N.E.3d 858, ¶ 8.  The Ohio Supreme Court cautions that the plain-error doctrine is warranted only under exceptional circumstances to prevent injustice. *Id.* at ¶ 15.

{¶10}   Hughes argues that it is "elementary" that typed and handwritten information on the outside of an exhibit envelope may *only* be used for identification or chain-of-custody purposes and cites as support an unreported Second District decision, *State v. Harmon*,  2d Dist. Clark No. 2932, 1993 Ohio App. LEXIS 1268, 6-8 (Mar. 2, 1993).  As an unreported court of appeals case decided before May 1, 2002, it is unclear what precedential authority to afford *Harmon*.  *See* Rep.Op.R. 3.4. Nevertheless, even if we gave it precedential weight, it does not support Hughes's argument.  *Harmon* states that writing on an exhibit *may* be used in lieu of direct testimony to establish the identity of an item with no unique features or to show that the item has not been tampered with or substituted.  *Harmon* at 7.  It does not stand

for the proposition that identification or chain of custody are the *only* permissible evidentiary uses for such writing.

{¶11} It is not necessary to determine whether the trial court erred by admitting the writing on the envelope because any potential error would not prejudice Hughes. In cases where the writing identifying exhibits also serves as probative evidence of an element of an offense, the writing usually conclusively labels the exhibit's contents as prohibited drugs of abuse. *See, e.g.*, *State v. Good*, 110 Ohio App. 415, 165 N.E.2d 28 (10th Dist.1960). The writing on the outside of the envelope here details, in relevant part, that the firearm inside was "☑ Test Fired Date: 01-15-23 By PO B Shaw" alongside other checkboxes. That line reports that a test-fire was conducted, when, and by whom. It says nothing about the results of the test-firing. Thus, the writing is not probative of whether the firearm held inside was operable. Because the writing was not probative of whether the firearm was operable and we presume that the judge in a bench trial "considered only the relevant, material, and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary," the trial court did not rely on the writing in finding Hughes guilty. *See State v. Beck*, 1st Dist. Hamilton No. C-150539, 2016-Ohio-8122, ¶ 28, quoting *State v. White*, 15 Ohio St.2d 146, 151, 239 N.E.2d 65 (1968). Thus, Hughes could not be prejudiced by any potential error in admitting the exhibit.

{¶12} Consequently, we overrule the first assignment of error.

### II. *Sufficiency and manifest weight of the evidence.*

{¶13} In his second assignment of error, Hughes argues that his conviction was based on insufficient evidence and against the manifest weight of the evidence.

Specifically, Hughes argues that there was not sufficient evidence as to the elements of intoxication and the operability of his firearm.

{¶14} A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the state has met its burden of production at trial. *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997) (Cook, J., concurring). When reviewing the sufficiency of the evidence, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense proved beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of the witnesses. *State v. Thomas*, 1st Dist. Hamilton No. C-120561, 2013-Ohio-5386, ¶ 45. It is a question of law for the court to determine and a court is not to weigh the evidence unless, after viewing the evidence, it weighs heavily against conviction. *Id.*

{¶15} In contrast, in deciding whether a conviction is against the manifest weight of the evidence, an appellate court determines whether the state has appropriately carried its burden of persuasion. *Thompkins* at 390 (Cook, J., concurring). In reviewing the manifest weight of the evidence, an appellate court must review "the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed." *State v. Bailey*, 1st Dist. Hamilton No. C-140129, 2015-Ohio-2997, ¶ 59, quoting *Thompkins* at 387. In reviewing a manifest-weight challenge, this court sits as a "thirteenth juror." *State v. Curry*, 1st

Dist. Hamilton No. C-180493, 2020-Ohio-1230, ¶ 17, quoting *Thompkins* at 387. However, a reviewing court will not substitute its judgment for that of the trier of fact on the issue of witness credibility unless it is patently apparent the trier of fact lost its way in arriving at its verdict. *State v. Porter*, 1st Dist. Hamilton No. C-200459, 2021-Ohio-3232, ¶ 25.

### A. Intoxication

{¶16}   R.C. 2923.15 provides, in relevant part, that "[n]o person, while under the influence of alcohol or any drug of abuse, shall carry or use any firearm or dangerous ordnance." "Under the influence" has been defined as:

> the condition in which a person finds himself after having consumed some intoxicating beverage, whether mild or potent, and in such quantity, whether small or great, that its effect on the person adversely affects his actions, reactions, conduct, movements or mental processes or impairs his reactions to an appreciable degree, under the circumstances then existing so as to deprive him of that clearness of the intellect and control of himself which he would otherwise possess.

*State v. Maynard*, 1st Dist. Hamilton No. C-230160, 2023-Ohio-4619, ¶ 38, quoting *State v. Eldridge*, 12th Dist. Warren No. CA2015-02-013, 2015-Ohio-3524, ¶ 7. Evidence that the accused admitted to consuming alcohol and exhibited physical indicia of intoxication such as glassy or bloodshot eyes, slurred speech, staggering, swaying, and the odor of alcohol on the accused's breath or person are sufficient to prove intoxication. *Id.* at ¶ 39-40.

{¶17}   No field-sobriety, blood, or urine tests were conducted on Hughes. The evidence of intoxication presented at trial was based upon the witnesses' testimony.

8

Holtmann and Officer Friedman both testified that they believed Hughes was intoxicated based upon the physical indicia of alcohol intoxication they observed. Holtmann observed that Hughes was "swaying back and forth a lot" that night. Officer Friedman observed the slight odor of alcohol on Hughes's breath, he was "kind of swaying," that "his hand-eye coordination was maybe impaired or slightly altered," he had trouble forming sentences, and he slurred his speech. The two witnesses' opinions, together with the physical indica of intoxication, when viewed in the light most favorable to the prosecution, are sufficient to show that Hughes was under the influence of alcohol that night.

{¶18} Hughes argues that that evidence is not credible because Officer Friedman's and Holtmann's observations of Hughes's intoxication do not align. We note that the trier of fact is in the best position to judge the credibility of the witnesses. *See State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus; *State v. Jackson*, 1st Dist. Hamilton No. C-210634, 2023-Ohio-785, ¶ 17.

{¶19} Holtmann opined that Hughes was drunk that night and observed that Hughes was "swaying back and forth a lot." Officer Friedman opined that Hughes was "most definitely impaired" and observed the slight odor of alcohol on Hughes's breath, he was "kind of swaying," that "his hand-eye coordination was maybe impaired or slightly altered," he had trouble forming sentences, and he slurred his speech. These observations were not inconsistent with each other as both witnesses observed that Hughes swayed and both witnesses independently arrived at their opinions. But Holtmann did not echo Officer Friedman's observation that Hughes's breath smelled of alcohol or that he was having trouble forming sentences and slurring his speech. However, Officer Friedman is a trained police officer with six years of experience and

often interacts with intoxicated persons. It is not incredible that a trained and experienced police officer would be more observant of physical indicia of intoxication than the everyday citizen. The trial court did not clearly lose its way in believing Officer Friedman's and Holtmann's independent opinions that Hughes was under the influence of alcohol. *See Maynard*, 1st Dist. Hamilton No. C-230160, 2023-Ohio-4619, at ¶ 39-40 (conviction for having a weapon while intoxicated not against the manifest weight of the evidence where multiple police officers opined the defendant was intoxicated and displayed multiple physical indica of intoxication).

{¶20} Hughes also argues that he swayed when standing because of his diabetes and his blood sugar being too high and that he showed poor balance because of his leg injuries. However, Hughes offered no medical explanation at trial as to whether those conditions would cause the behaviors observed by Officer Friedman and Holtmann as indicia of intoxication. When conflicting explanations are presented at trial, a conviction is not against the manifest weight of the evidence simply because the trier of fact accepts one explanation over another. *State v. McDaniel*, 2021-Ohio-724, 168 N.E.3d 910, ¶ 25 (1st Dist.), quoting *State v. Robinson*, 12th Dist. Butler No. CA2018-08-163, 2019-Ohio-3144, ¶ 29.

### B. Operability of the firearm

{¶21} Turning to the element of operability, a "firearm" is defined to mean "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant" and the definition includes "an unloaded firearm, and any firearm that is inoperable but can be readily rendered operable." R.C. 2923.11(B)(1). Courts have interpreted the statutory definition of firearm to add an additional essential element of operability to the offense of having a

firearm while intoxicated. Thus, the firearm's operability must be proven beyond a reasonable doubt. *See State v. Weber*, 12th Dist. Clermont No. CA2018-06-040, 2019-Ohio-916, ¶ 12.

{¶22} Here, the state presented sufficient evidence that Hughes's firearm was operable. Officer Shaw test-fired the firearm the day after arresting Hughes. The state did not offer a report detailing the test-firing of the firearm. Nor did Officer Shaw testify in court about the test-firing he conducted. Rather, Officer Friedman testified about the test-firing as he walked Officer Shaw through the process over the phone. A test-firing occurred as the front of the envelope was marked "test fired," Officer Friedman testified to walking Officer Shaw through the test-fire process which ended in an audible gunshot, and Officer Friedman identified Hughes's firearm and a spent test-fire cartridge case in the envelope. However, as discussed above, the envelope does not indicate whether the test-firing was successful. The only evidence that Officer Shaw's test-fire was successful was Officer Freidman's unobjected-to testimony that Officer Shaw told him over the phone that the gun fired. When viewed in the light most favorable to the prosecution, a rational finder of fact could reasonably infer from testimony about the test-firing that Hughes's firearm was operable.

{¶23} Additionally, there was circumstantial evidence that Hughes's firearm was operable. Proof of operability "is not dependent on an empirical analysis of the gun." *State v. Pope*, 1st Dist. Hamilton No. C-180587, 2019-Ohio-3599, ¶ 8, quoting *State v. Murphy*, 49 Ohio St.3d 206, 209, 551 N.E.2d 932 (1990). When Officer Friedman confiscated Hughes's firearm, it had a loaded magazine and a round loaded in the chamber. Officer Friedman opined that it was operable at that time. A firearm that was found loaded, in conjunction with a trained and experienced police officer's

opinion that the firearm is operable, can be sufficient evidence of operability. *Pope* at ¶ 12; *State v. Holt*, 3d Dist. Marion No. 9-09-39, 2010-Ohio-2298, ¶ 67.

{¶24} When determining whether a firearm is operable, courts may rely upon circumstantial evidence including the representations and actions of the individual exercising control over the firearm. R.C. 2923.11(B)(2); *Murphy* at paragraph one of the syllabus. Hughes's own statements to the police officers also implied that his firearm was operable. When asked whether he had "anything of concern" to the police officers, Hughes answered that he had a gun carried in a holster. Moreover, Holtmann testified that Hughes threatened to shoot someone that night. When the officers asked Hughes about those threats, he replied that had he wanted to shoot Lewis, he would have done so. Hughes's representation that he could have shot someone, had he wanted to, made on the night he carried a loaded firearm implies that his firearm was operable, particularly when we view those statements in the light most favorable to the prosecution. *See Murphy* at 208-209 (sufficient proof of operability where defendant announced a robbery, produced a firearm, and said he would kill the clerk if he did not give him the money); *see also Thompkins*, 78 Ohio St.3d at 383, 678 N.E.2d 541, citing *id.* (sufficient proof of operability where defendant made implicit threats while holding a firearm). Hughes's own statements, the circumstances in which he made those statements, and a trained officer's opinion that the seized handgun was loaded and operable are sufficient to prove that Hughes's handgun was operable that night. *See Pope* at ¶ 12 (sufficient proof of operability where defendant told officers he had a "gun," the officer found it with a fully loaded magazine and a round in the chamber, and defendant later testified it was operable).

{¶25} Nor did the trier of fact lose its way in concluding that Hughes's firearm was operable. The testimony concerning the test-firing does not contradict the other circumstantial evidence about operability. Even if we did not consider the testimony concerning the test-firing, the circumstantial evidence that Hughes's firearm was operable that night was uncontested. The trier of fact did not patently lose its way in determining that the firearm was operable based on the facts that Officer Friedman confiscated a loaded firearm, he opined that the firearm was operable when it was seized, Hughes told the officers he had a holstered firearm, and he represented to the officers that he was able, but disinclined, to shoot his paramour. *See State v. Jeffers*, 143 Ohio App.3d 91, 95, 757 N.E.2d 417 (1st Dist.2001) (conviction of a firearm specification not contrary to the manifest weight of the evidence where defendant threatened to shoot the victim and indicated he had a concealed firearm, though it was never recovered).

{¶26} In sum, the evidence presented, when viewed in the light most favorable to the state, was sufficient to prove that Hughes was under the influence of alcohol that night and that the firearm he was carrying was operable. The trial court did not lose its way and create a manifest miscarriage of justice in convicting Hughes. This is not an exceptional case where the evidence weighs heavily against conviction. Consequently, we overrule the second assignment of error.

### Conclusion

{¶27} Having overruled the two assignments of error, we affirm the judgment of the municipal court.

Judgment affirmed.

BERGERON, P.J., and CROUSE, J., concur.

13

Please note:

The court has recorded its entry on the date of the release of this opinion.