[Cite as *State v. Jillson*, 2012-Ohio-1034.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-110430 |
|  |  | TRIAL NO. B-1004714 |
| Plaintiff-Appellee, | : |  |
|  |  | *O P I N I O N.* |
| vs. | : |  |
| SAMUEL JILLSON, | : |  |
| Defendant-Appellant. | : |  |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  March 16, 2012

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Paula E. Adams*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Christine Y. Jones*, for Defendant-Appellant.

Please note:  This case has been removed from the accelerated calendar.

**SYLVIA S. HENDON, Judge.**

{¶1}    Following a jury trial, defendant-appellant Samuel Jillson was found guilty of two counts of gross sexual imposition in violation of R.C. 2907.05(A)(4). The trial court imposed five years' imprisonment for each offense.  It made the sentences consecutive, for an aggregate term of ten years' imprisonment.  The trial court additionally classified Jillson as a Tier II sexual offender pursuant to Am.Sub.S.B. No. 10 ("Senate Bill 10").

{¶2}    Jillson now appeals, raising eight assignments of error for our review. Because we find no merit to Jillson's arguments, we affirm the judgment of the trial court.

### Factual Background

{¶3}    The evidence presented during trial established that the victim of these offenses, nine-year-old D.R., resided in the same trailer park as Jillson.  Jillson owned several Jack Russell terriers, and on July 12, 2010, D.R. walked to Jillson's home and asked if she could pet his dogs.  D.R. and Jillson stood on Jillson's porch, separated by a small gate used to contain the dogs.  As D.R. played with the dogs, Jillson reached over the gate and touched her breast.  He then took her hand and placed it on his penis.  D.R. testified that these incidents made her feel frightened, so she told Jillson that her mom was looking for her and that she needed to leave. Jillson instructed D.R. not to tell anyone what had transpired.  When D.R. reached her home, she immediately wrote a letter to her mother explaining how Jillson had touched her.  D.R.'s mother contacted the police.  Jillson was arrested later that

evening outside his home, transported to the Madeira Police department, and interviewed.

{¶4} Jillson was subsequently indicted for two counts of gross sexual imposition. Prior to trial, he filed a motion to suppress the statement obtained during the interview on the grounds that he had been intoxicated at the time that the statement was given. The trial court denied Jillson's motion to suppress. The case proceeded to trial, where Jillson was found guilty of both offenses. The trial court sentenced Jillson to an aggregate term of 10 years' imprisonment and classified him as a Tier II sexual offender.

### Sufficiency and Weight of the Evidence

{¶5} In his first three assignments of error, Jillson argues that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence, and that the trial court erred in denying his Crim.R. 29 motion for an acquittal. We consider these assignments together.

{¶6} When reviewing the sufficiency of the evidence, this court must view all evidence and reasonable inferences in the light most favorable to the prosecution to determine whether a reasonable trier of fact could have found all the elements of the offenses proven beyond a reasonable doubt. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st. Dist.1983). We employ the same standard when determining whether a trial court properly denied a defendant's Crim.R. 29 motion for an acquittal. *State v. Brumbach*, 1st Dist. No. C-100792, 2011-Ohio-6635, ¶ 14. In contrast, when reviewing the manifest weight of the evidence, this court must weigh the evidence and all reasonable inferences and consider the credibility of the witnesses to determine whether the trier of fact lost its way and created such a

manifest miscarriage of justice that the convictions must be reversed. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541.

{¶7}   Jillson was found guilty of two counts of gross sexual imposition in violation of R.C. 2907.05(A)(4).  This statute states in relevant part that

> No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when * * * [t]he other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.

{¶8}   D.R. testified that, at the time of trial, she was ten years old.  She additionally testified that Jillson had pinched her breast and had placed her hand upon his penis by grabbing her wrist.  This was sufficient to establish the elements of gross sexual imposition.

{¶9}   We further find that Jillson's convictions were not against the manifest weight of the evidence.  The jury was in the best position to judge the credibility of the witnesses.  It was entitled to reject Jillson's assertion that he had not touched D.R. and to find the testimony offered by D.R. to be credible.  The first, second, and third assignments of error are overruled.

*Sentencing*

{¶10} In his fourth assignment of error, Jillson argues that the trial court abused its discretion by imposing an excessive aggregate sentence. This court's review of a sentence is two-part. First, we must determine if the sentences imposed were clearly and convincingly contrary to law. *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, ¶ 14. Here, the sentences imposed fell within the available statutory ranges and were not contrary to law. Next, we must determine if the trial court abused its discretion in the imposition of sentence. *Id.* at ¶ 17. Jillson touched the breast of a nine-year-old girl and forced her to place her hand on his penis. He committed these acts on his front porch, in daylight, on a child who had come to his home to play with his dogs. Jillson showed no remorse for his crimes. Under these circumstances, we cannot conclude that the trial court abused its discretion in the imposition of sentence. The fourth assignment of error is overruled.

{¶11} In his seventh assignment of error, Jillson argues that the trial court erred by sentencing him on both counts of gross sexual imposition because they were allied offenses of similar import that were subject to merger.

{¶12} Under R.C. 2941.25, Ohio's multiple-count statute, a trial court may convict and sentence a defendant for two or more offenses that arose out of the same criminal transaction if the offenses (1) were not allied offenses of similar import, (2) were committed separately, or (3) were committed with a separate animus as to each offense. *State v. Bickerstaff*, 10 Ohio St.3d 62, 65-66, 461 N.E.2d 892 (1984); *see also State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, ¶ 51; *State v. Evans*, 1st Dist. No. C-100028, 2011-Ohio-2356, ¶ 6. The Ohio Supreme Court has recently clarified that, when determining whether two offenses are allied

offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered. *Johnson* at syllabus.

{¶13} Here, although the offenses occurred near each other in time, we find that Jillson committed two separate acts. First, Jillson pinched D.R.'s breast. Upon completion of that act, he grabbed D.R.'s wrist and placed her hand upon his penis. The two acts occurred in close proximity, but were separate actions involving different types of sexual conduct. *See State v. Nicholas*, 66 Ohio St.3d 431, 435, 613 N.E.2d 225 (1993). For that reason, the offenses were not allied offenses of similar import subject to merger. Consequently, the trial court did not err by imposing sentence on both offenses. The seventh assignment of error is overruled.

### *Motion to Suppress*

{¶14} In his sixth assignment of error, Jillson argues that the trial court erred by failing to grant his motion to suppress the statement obtained on the night of his arrest. Jillson argues that he had not voluntarily waived his *Miranda* rights and that the statement had not been given voluntarily because he had been intoxicated at the time.

{¶15} Our review of a trial court's ruling on a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. We must accept the trial court's findings of fact if they are supported by competent, credible evidence. But we review de novo the application of the law to those relevant facts. *Id.* Here, our review involves two distinct issues: whether Jillson knowingly and voluntarily waived his *Miranda* rights, and whether his statements to the police were made voluntarily. *See State v. Cedeno*, 192 Ohio App.3d 738, 2011-Ohio-674, 950 N.E.2d 582, ¶ 11 (1st Dist.).

{¶16} The state bears the burden of proving by a preponderance of the evidence that the defendant made a voluntary, knowing, and intelligent waiver of his *Miranda* rights. *Id.* at ¶ 15. In the absence of evidence of coercive police conduct or that the defendant's will was overborne, a waiver of *Miranda* rights will be deemed voluntary. *State v. Slaughter*, 1st Dist. No. C-980702, 2000 Ohio App. LEXIS 1821 (Apr. 28, 2000). The record before us contains no evidence of police coercion or intimidation. Jillson was read his *Miranda* rights, indicated that he understood those rights, and proceeded to waive them by speaking with the police. As the interview proceeded, Jillson at some point chose to invoke his *Miranda* rights and requested an attorney. The interview ceased at that point. Jillson's invocation of his *Miranda* rights is strong evidence that he understood those rights and had voluntarily waived them until that point in time. We find that the state proved by a preponderance of the evidence that Jillson knowingly, voluntarily, and intelligently waived his *Miranda* rights.

{¶17} We now consider whether Jillson's statement to the police was made voluntarily. Jillson argues that, due to his level of intoxication, it was not. The state again bears the burden of proving by a preponderance of the evidence that a defendant voluntarily provided a statement. *Id.* A court must look at the totality of the circumstances in making such a determination, including "the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." *Id.* Intoxication is one factor to consider in this analysis, but intoxication in and of itself will not render a confession or statement involuntary. *Id.*

7

{¶18} The record indicates that Jillson was intoxicated at the time that his statement was obtained. When the Madeira police first encountered Jillson outside his home, they witnessed him place an open container on the passenger seat of his vehicle as he exited. Jillson smelled of an alcoholic beverage, admitted that he had been drinking, and stumbled and slurred his words at times. Madeira police officer Timothy Vogel, who had interviewed Jillson, testified that although Jillson seemed too appreciably impaired to operate a motor vehicle, he was not too appreciably impaired to hold a conversation. The trial court believed the officer's testimony. In a suppression hearing, matters of credibility are for the trier of fact to resolve. *State v. Jones*, 1st Dist. No. C-080518, 2009-Ohio-4190, ¶ 22, citing *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). And in this case, the record supports the officer's conclusion. Jillson provided appropriate answers to questions, answered the questions coherently, and later knowingly invoked his right to counsel. Under these circumstances, we cannot find that Jillson's intoxication rendered his statement involuntary. *Slaughter* at 10.

{¶19} The state proved by a preponderance of the evidence that Jillson voluntarily provided a statement to the police. The trial court properly denied Jillson's motion to suppress. The sixth assignment of error is overruled.

### Mayerson Center Interview

{¶20} In his eighth assignment of error, Jillson argues that the trial court erred in admitting D.R.'s interview at the Mayerson Center. Jillson argues that this evidence was inadmissible under Evid.R. 803(4) because the evidence was collected to be used at trial, rather than for the purpose of medical diagnosis or treatment.

{¶21} The Children's Hospital Mayerson Center is a child-advocacy center for child victims of abuse. Rather than having a child-abuse victim sit through numerous interviews with representatives from different agencies, a social worker interviews the child and obtains the information needed by each agency, including medical staff, the police, and the prosecutor's office. D.R. was interviewed by Alexandra Tucker at the Mayerson Center on the day after the offenses in this case took place. During the interview, D.R. explained to Tucker how Jillson had touched her. Tucker testified concerning the statements that D.R. had made, and her interview of D.R. was played for the jury over Jillson's objection.

{¶22} Evid.R. 803(4) provides that statements given for the purposes of medical diagnosis and treatment are not excludable as hearsay. We have previously found that statements given by child-abuse victims to social workers at the Mayerson Center were admissible under this rule. *See State v. Walker*, 1st Dist. No. C-060910, 2007-Ohio-6337, ¶ 36. The determination of whether a statement by a child-abuse victim was given for purposes of medical diagnosis or treatment falls within the discretion of the trial court. *State v. Lukacs*, 188 Ohio App.3d 597, 2010-Ohio-2364, 936 N.E.2d 506, ¶ 7 (1st Dist.). Relevant factors to such a determination include "(1) whether the child was questioned in a leading or suggestive manner; (2) whether a motive to fabricate existed, such as a custody battle; (3) whether the child understood the need to tell medical personnel the truth; (4) the child's age; and (5) the consistency of the child's declarations." *Id.*

{¶23} Application of these factors indicates that the trial court did not abuse its discretion by allowing admission of D.R.'s interview. Tucker needed to ascertain the extent of harm, both physical and psychological, suffered by D.R. in order to

9

determine if further treatment was necessary. D.R. was nine years old, appeared to understand the necessity for truth, and had no motive to fabricate her allegations. Further, D.R. was consistent in her declarations and description of the offenses. We conclude that a majority of D.R.'s statements in the interview were given for purposes of medical diagnosis or treatment. And, to the extent that any individual statement could be deemed forensic in nature, rather than medical or diagnostic, we conclude that no error occurred in the admission of such statements. D.R. testified at trial and was subject to cross-examination on all statements given during the interview. *See State v. Daniels*, 1st Dist. No. C-090566, 2010-Ohio-5258, ¶ 15. In fact, Jillson's counsel questioned D.R. about her statements made during the interview prior to the interview's admission at trial.

{¶24} The trial court properly admitted D.R.'s interview at the Mayerson Center under Evid.R. 803(4). The eighth assignment of error is overruled.

### Senate Bill 10

{¶25} In his fifth assignment of error, Jillson argues that the trial court erred in classifying him under Senate Bill 10, Ohio's version of the federal Adam Walsh Act, because it violates the due process clauses of both the United States and Ohio Constitutions.

{¶26} R.C. Chapter 2950 contains Ohio's statutory scheme for the classification and registration of sex offenders. *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, ¶ 3. This scheme was significantly amended in 2007 by the enactment of Senate Bill 10, which is largely based on the federal Adam Walsh Act, 42 U.S.C. 16901 et seq. *State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108, ¶ 7. Under the provisions of Senate Bill 10, judges have no

discretion in the classification of and registration requirements imposed upon sex offenders. Rather, offenders are automatically classified as either Tier I, Tier II, or Tier III offenders based solely upon the offense committed. *Bodyke* at ¶ 21-22. Because classification is automatic, the need for a classification hearing was dispensed with under Senate Bill 10. Once an offender is classified in the appropriate tier, he or she must register accordingly. *Id.* at ¶ 23. The registration and reporting requirements are more expansive under Senate Bill 10 than the former scheme, and also require registration for lengthier periods of time. *Id.* at ¶ 24-28.

{¶27} Jillson argues that his classification as a Tier II offender under Senate Bill 10 based solely upon the offense committed, in the absence of a classification hearing, violates his due-process rights and is unconstitutional. Due-process protections are triggered when a sexual offender is "deprived of a protected liberty or property interest as a result of the registration requirement." *State v. Hayden*, 96 Ohio St.3d 211, 2002-Ohio-4169, 773 N.E.2d 502, ¶ 6.

{¶28} This is an issue of first impression in this district. But the Fifth Appellate District has considered this same argument and held that "[n]o due process violation occurs where 'the law required an offender to be registered based upon the fact of the conviction alone.' ". *In Re Adrian R.,* 5th Dist. No. 08-CA-17, 2008-Ohio-6581, ¶ 33, quoting *Doe I v. Dann*, N.D. Ohio No. 1:08 CV 220, 2008 U.S. Dist. LEXIS 45228 (June 9, 2008). The Fourth Appellate District has reached the same conclusion and likewise held that classification of a sexual offender without a hearing does not violate due process. *State v. Netherland*, 4th Dist. No. 08CA3043, 2008-Ohio-7007, ¶ 21, *rev'd on other grounds, sub. nom. In Re Sexual Offender Reclassification Cases*, 126 Ohio St.3d 322, 2010-Ohio-3753, 933 N.E.2d

801, ¶ 15-16.  The Ohio Supreme Court has not considered this argument with respect to the current version of R.C. Chapter 2950.  But that court has previously determined that, under Ohio's former sexual-offender-classification scheme, classification by operation of law did not violate due process.  *Hayden* at ¶ 18.

{¶29}  Following our review of the relevant law, we are not persuaded by Jillson's arguments that his classification as a Tier II offender without a hearing violated his due-process rights.  Jillson has failed to establish what protected liberty or property interest he has been deprived of by being classified without a hearing. Jillson's classification was automatic and was determined based upon the offense committed.  No discretion on the part of the trial court was involved, and, because offenders are classified by operation of law, the classification system is uniformly applied and all offenders are treated alike.  In fact, because classification is based upon the offense committed, an offender has advance notice upon indictment as to how he or she will be classified, if later convicted of the offense.  Therefore, we conclude that sexual-offender classification under Senate Bill 10 in the absence of a hearing does not violate an offender's due-process rights.  The fifth assignment of error is overruled.

{¶30}  The judgment of the trial court is, accordingly, affirmed.

Judgment affirmed.

**HILDEBRANDT, P.J.,** and **FISCHER, J.,** concur.

Please note:
        The court has recorded its own entry on the date of the release of this opinion.