[Cite as *State v. Johnson*, 2018-Ohio-4131.]

# IN THE COURT OF APPEALS
## FIRST APPELLATE DISTRICT OF OHIO
## HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-170371 |
| | | TRIAL NO. B-1602402 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| JEREMY JOHNSON, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  October 12, 2018

*Ronald W. Springman*, Assistant Hamilton County Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Sarah Nelson*, Assistant Public Defender, for Defendant-Appellant.

**DETERS, Judge.**

{¶1}   Defendant-appellant Jeremy Johnson appeals convictions for murder under R.C. 2903.02(A) and having weapons under a disability under R.C. 2923.13(A)(3).  We find no merit in his three assignments of error, and we affirm his convictions.

## I.  Facts and Procedure

{¶2}   The record shows that on March 30, 2016, near the Cumminsville Food Market, Jydale Keith was shot four times.  At the time, he was driving a black Nissan Maxima owned by his fiancée, Tamara Jackson.  The Nissan veered off the street, jumped a curb, and came to rest in a ravine.  Due to the thick foliage surrounding the ravine, Keith's body was not found until two days later.

### A.  Search for the Victim

{¶3}   Keith lived with Jackson in an apartment in the Moosewood neighborhood, close to Beekman Street.  The apartment was also close to the Cumminsville Food Market.  Many people loitered around the market and bought and sold drugs.  Gun shots were frequently heard around the market and in the Moosewood neighborhood.

{¶4}   On the day Keith was shot, he and Jackson were preparing for their son's birthday party to be held the next day.  According to Jackson, Keith dropped her off at the apartment about 7:40 p.m. and went out to get ice cream and supplies for the party.  Keith did not return.  Jackson repeatedly called and texted him, but she could not reach him.

{¶5}   Jackson knew something was wrong.  She walked around the neighborhood asking various people if they had seen Keith or the car he was driving,

but no one had any information. Jackson contacted family members and the news media in her efforts to find him. She even filed a police report accusing Keith of using her car without permission in an effort to get police to assist her in locating him.

### B. Discovery of the Car and Body

{¶6} Jackson also posted on Facebook, asking if anyone had seen Keith or the car. On April 1, 2016, she and her sister drove around the Moosewood neighborhood looking for him based on information she had received as a result of the post. As they were driving, Jackson's sister saw a dark car in a ravine near the intersection of Hopple and Beekman Streets.

{¶7} Jackson immediately raced to the car. When she got there, she noticed that all of the windows were rolled down. She saw Keith's body leaning back in the driver's seat and knew immediately that he was dead. She called 911 and did not touch anything at the scene.

{¶8} When police arrived, Jackson directed them to the car. The body was positioned as if Keith had tried to exit from the car. When Keith's body was removed from the car, police discovered that he had suffered multiple gunshot wounds. The coroner who performed an autopsy on Keith determined that he had suffered three gunshot wounds to his legs and one to his arm. Keith had died from massive blood loss, which was consistent with him driving his car a few hundred yards before passing out and dying.

{¶9} The coroner also determined the gun had been fired at close range, consistent with a passenger in the vehicle shooting the driver. She found fresh scratches on the left front side of Keith's shoulder and a bruise on the back of his head, both of which likely occurred at the time of the shooting. She stated that those

findings were consistent with him receiving an injury from the direction of the driver's side of the car.

{¶10} Inside the Nissan, investigators discovered massive blood stains. They also found .40-caliber Smith and Wesson shell casings under the driver's side floorboard and under the passenger seat. They found a .40-caliber Smith and Wesson bullet near the floor mat on the passenger side.

{¶11} A firearm examiner determined that the casings were fired from the same gun. The examiner had also received a bullet recovered from Keith's body during the autopsy. He determined it was consistent in size with the .40-caliber casings found in the Nissan. He also determined that the gun most likely used to shoot Keith was a Glock brand semiautomatic weapon.

### C. Video Footage from the Night of the Murder

{¶12} In their investigation, the police "worked backward," which led them to the Cumminsville Food Market. They discovered that there had been a report of "shots fired" at the store in the days leading up to Keith's murder. Police officers in the area had investigated and had found nothing.

{¶13} The police also discovered that the market had multiple surveillance cameras that monitored the inside and outside areas of the store operating the day of Keith's murder. The outside cameras showed various areas around the market, but not Beekman Street, where the murder had occurred.

{¶14} The video showed numerous people milling around outside the food market. They talked on cell phones, and some openly engaged in hand-to-hand drug sales. It also showed Cordero Lane, Johnson's codefendant, taking calls on his cell phone. Lane was wearing a gray hoodie, and stood out because he had his right

pants leg stuck over the top of his right shoe. Lane associated with others, both inside and outside of the food market.

{¶15} The video also showed Lane frequently talking to Johnson, who was easily identifiable because of a white tracheotomy apparatus around his neck. They approached each other several times and appeared to be having conversations, and then one or both of them walked out of the cameras' views. At one point, they separately walked toward the area where Keith was shot.

{¶16} Though no audio accompanied the videos, people appeared to be reacting to gunshots. A short time later, Johnson and Lane ran past the market. Johnson ran straight down Beekman Street, and Lane ran to a path that led to Moosewood Avenue.

{¶17} The video captured a Metro bus driving by at the same time that the people in the video had reacted to the gunshots. Subsequently, police found the bus driver, who stated that on the evening of March 30, 2016, he was driving southbound on Beekman Street when he heard two "pop" sounds that he thought were fireworks. He saw two black males running from a black car.

{¶18} When the bus driver got closer to the black car, he saw a man still sitting inside. He then saw the car speed off down Beekman Street. He realized that something was wrong and that the sounds he had heard were gunshots. He watched the car drift left of center, jump the curb, and disappear behind some bushes. Believing he had witnessed a crime, he notified his dispatcher and continued on his route.

{¶19} The police recovered video surveillance footage from the bus. The video showed the black Nissan that Keith had been driving the night of the murder with the door open. Johnson leaned into the driver's side of the Nissan, going "in and out of the car." At the same time, Lane was leaning into the passenger side. A

5

gunshot rang out, followed by a short delay and then two more gunshots. Lane fled immediately after the gunshots were fired, followed closely by Johnson. Then the black Nissan sped off and jumped the curb.

### D. Search of the Shooter's Trash

{¶20} After the discovery of the video surveillance footage, the police believed that Lane was the shooter. They went to his residence to execute a search warrant and found his trash sitting on the curb. In the trash, police found two bullets and one casing that were .40-caliber Smith and Wesson, and an empty ammunition box that had contained .40-caliber Smith and Wesson bullets, consistent with the ammunition used in the murder. They also found other types of ammunition, digital drug scales and mail with Lane's name on it.

### E. Johnson's Relationship to the Shooter and the Victim

{¶21} The evidence showed that Johnson, Lane and Keith had been friends. Jackson stated that Keith knew Johnson and Lane from the Moosewood neighborhood. Keith regularly bought drugs from Lane, and those transactions usually occurred at the Cumminsville Food Market. About a month before the murder, Jackson had observed Keith and Lane sitting outside her apartment in Lane's car smoking. Keith planned to invite Lane and his children to the birthday party that Keith and Jackson were having for their son.

{¶22} Jackson testified that Johnson had come to her apartment about two weeks before the murder. He came with an unidentified individual, and they had sold marijuana to Keith. Jackson also said that Lane and Johnson were "like family," and they considered themselves "cousins." She saw Lane and Johnson frequently at the Cumminsville Food Market. They were "obviously together" when she saw them, and they were selling drugs.

6

{¶23} Jackson identified both Johnson and Lane from still photographs obtained from the Cumminsville Food Market video. She also stated that when she was looking for Keith, she had seen them together. She tried to speak with them, but they ignored her. Jackson said, however, that she knew of "no beef" between Keith and Lane or Johnson.

### F. Johnson's Statements to Police

{¶24} After Johnson was arrested, he was interviewed by police. When the police detectives entered the room, Johnson was sleeping on the floor. During the interview, Johnson appeared nonchalant.

{¶25} Johnson admitted to arguing with another person, whom he did not know, on the night of the murder, and to standing on the driver's side of the black Nissan. He also admitted that he had had an argument with the same person while in jail years before. He pointed to a photograph of Keith and admitted that he had fought with the person in the photograph that evening. He said that Keith had thrown punches and that he had punched back. But, he told police that he had walked to and from the car by himself. Johnson also stated that he had been hearing that the person he had fought with was dead.

### II. Other-Acts Evidence

{¶26} In his first assignment of error, Johnson contends that the trial court erred in permitting the state to present prejudicial other-acts evidence. He argues that the trial court should not have admitted testimony regarding Johnson's and Lane's drug sales and possession, Lane's possession of drug scales and ammunition, and Johnson's prior incarceration. He also argues that the court erred in failing to give limiting instructions for every witness who testified about other bad acts and during the final jury instructions. This assignment of error is not well taken.

{¶27} Generally the prosecution in a criminal case may not present evidence that the defendant has committed other crimes or acts independent of the crime for which the defendant is being tried to establish that he acted in conformity with his bad character. Evid.R. 404(B); *State v. Wallace*, 1st Dist. Hamilton No. C-160613, 2017-Ohio-9187, ¶ 56. But Evid.R. 404(B) also provides that other bad acts are admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *State v. Shedrick*, 61 Ohio St.3d 331, 337, 574 N.E.2d 1065 (1991); *Wallace* at ¶ 56.

{¶28} Because Evid.R. 404(B) codifies an exception to the general rule, it must be strictly construed against admissibility. *State v. Coleman*, 45 Ohio St.3d 298, 299, 544 N.E.2d 622 (1989); *Wallace* at ¶ 57. Nevertheless, the other acts need not be similar to the crime at issue. If the acts tend to show by substantial proof any of the items enumerated in Evid.R. 404(B), evidence of other acts is admissible. *Coleman* at 299-300; *Wallace* at ¶ 57.

{¶29} Johnson did not object to most of the testimony of which he now complains or the court's failure to give limiting instructions after each witness whose testimony included other-acts evidence. The failure to object precludes him from raising the issue on appeal unless its rises to the level of plain error. *State v. Underwood*, 3 Ohio St.3d 12, 13, 444 N.E.2d 1332 (1983); *State v. Thomas*, 1st Dist. Hamilton No. C-120561, 2013-Ohio-5386, ¶ 22.

{¶30} The general inadmissibility of other-acts evidence does not prevent the state from demonstrating the "setting" of a case. *State v. Wilkinson*, 64 Ohio St.2d 308, 317, 415 N.E.2d 261 (1980); *State v. Kendrick*, 1st Dist. Hamilton No. C-080509, 2009-Ohio-3876, ¶ 24. The state proceeded on the theory that Johnson had aided and abetted Lane in murdering Keith. The testimony regarding Johnson's and Lane's drug activity was not independent of the crimes charged in the

indictment. It was "inextricably interwoven" with the crimes and was "necessary to give a complete picture of what occurred." *See Thomas* at ¶ 23; *Kendrick* at ¶ 24. The testimony was also necessary to show the relationships between Lane, Johnson, and the victim. Consequently, we cannot hold that the trial court abused its discretion by allowing testimony about the drug activity into evidence, much less that it committed plain error. *See State v. Wickline*, 50 Ohio St.3d 114, 119-120, 552 N.E.2d 913 (1990); *State v. Wright*, 2017-Ohio-1568, 90 N.E.3d 162, ¶ 45 (1st Dist.); *Thomas* at ¶ 22-23.

{¶31} Next, Johnson takes issue with the admission of testimony regarding the items that the police had recovered from Lane's trash. The .40-caliber Smith and Wesson bullets and casing, as well as the box that had contained the same type of ammunition, were consistent with the ammunition used in the murder. That evidence was relevant because it connected Lane to the shooting, and Johnson aided and abetted Lane in committing the murder.

{¶32} But, the police also found other types of ammunition and two digital drug scales, which were admitted into evidence. The detective testifying about that evidence admitted that there was "no reason to think most of those were connected with the shooting in any way."

{¶33} Johnson failed to object to that testimony. Given the other admissible evidence showing that Lane, Johnson and the victim were involved in drug activity and the otherwise overwhelming evidence against Johnson, any error in the admission of that evidence did not rise to the level of plain error. *See Wickline* at 119-120; *Thomas*, 1st Dist. Hamilton No. C-120561, 2013-Ohio-5386, at ¶ 22-23; *State v. Hirsch*, 129 Ohio App.3d 294, 309, 717 N.E.2d 789 (1st Dist.1998).

{¶34} Johnson also argues that the trial court should not have admitted Johnson's statement to police in which he had admitted to spending time in jail.

9

Johnson filed a motion in limine related to that statement, and also objected at trial. Given the other evidence of drug dealing and the otherwise overwhelming evidence against Johnson, any error in admitting that testimony was harmless because no reasonable probability existed that it contributed to Johnson's convictions. *See State v. Bayless*, 48 Ohio St.2d 73, 357 N.E.2d 1035 (1976), paragraph seven of the syllabus; *State v. Brundage*, 1st Dist. Hamilton No. C-030632, 2004-Ohio-6436, ¶ 33.

{¶35} Further, the trial court gave a cautionary instruction. It told the jury, "The fact that he was incarcerated on a previous occasion is not relevant to the issue of his guilt or innocence on the charges before you now and must not be considered by you for that purpose. There is no presumption that he engaged in any criminal conduct." We presume that the jury followed the court's instruction. *State v. Garner*, 74 Ohio St.3d 49, 59, 656 N.E.2d 623 (1995); *State v. Bell*, 2015-Ohio-1711, 34 N.E.3d 405, ¶ 21 (1st Dist.).

{¶36} Johnson also argues that the trial court should have excluded the other-acts evidence under Evid.R. 403(A), which provides that relevant evidence is not admissible if its "probative value is substantially outweighed by the danger of unfair prejudice." The decision whether to admit or exclude relevant evidence under Evid.R. 403(A) rests within the trial court's discretion. *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987), paragraph two of the syllabus; *Hirsch*, 129 Ohio App.3d at 307, 717 N.E.2d 789. An appellate court will not disturb the trial court's decision to admit or exclude evidence absent an abuse of discretion and a showing that the accused has suffered material prejudice. *State v. Martin*, 19 Ohio St.3d 122, 129, 483 N.E.2d 1157 (1985); *Hirsch* at 307.

{¶37} Most of the other-acts evidence directly tied Johnson to the crime. While the admission of the evidence was undoubtedly prejudicial, the rule only

10

requires exclusion for "unfair prejudice." *See Bell* at ¶ 48. The evidence was not presented for the sole purpose of appealing to the jurors' emotions, sympathies or biases. *See id.* Instead, the other-acts evidence provided the setting of the case and showed Johnson's relationship with Lane and with Keith. Under the circumstances, we cannot hold that the trial court abused its discretion in allowing the other-acts testimony into evidence, much less that its admission rose to the level of plain error. *See Bell* at ¶ 48; *Hirsch* at 307-309.

{¶38} Finally, Johnson argues that the trial court should have given a limiting instruction after the testimony of every witness who testified regarding other-acts evidence and in the final jury instructions. He relies on *State v. Shaw*, 2d Dist. Montgomery No. 21880, 2008-Ohio-1317, in which the Second Appellate District stated that "[i]n cases where evidence has been admitted for a very limited purpose and that evidence tends to show that Defendant has committed other criminal acts, the jury should be instructed that such evidence must not be considered by them as proof that the defendant committed the crime charged." *Id.* at ¶ 13. The court further stated that the limiting instruction should be given at the time the other-acts evidence is received and that the failure to give any limiting instruction is plain error. *Id.*

{¶39} We do not find *Shaw* to be persuasive. In *Shaw*, the other-acts evidence was coupled with an indictment that lacked specifics about the dates of the charged crimes, 15 rape charges and ten sexual-battery charges. Further, the court stated, "We find no justification for the extensive amount of 'other acts' evidence presented in this case. Even if some minimal reference to the pattern of abuse as part of the fabric of the victims' lives was more relevant than prejudicial, the pervasive nature of the testimony precluded Shaw's right to a fair trial." *Id.* at ¶ 14.

{¶40} Subsequent to *Shaw*, the Ohio Supreme Court decided *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, 920 N.E.2d 104, in which it held that the failure to request a limiting instruction waived the issue for appeal. It stated that when the defendant fails to request a limiting instruction on other-acts evidence, the trial court's failure to give an instruction is not plain error when "[n]othing suggests that the jury used 'other acts' evidence to convict" the defendant because the defendant was a bad person. *Id.* at ¶ 136, quoting *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶ 91. In later cases, the Second Appellate District, citing *Perez,* held that a limiting instruction was not required when there was no indication that the jury had used other-acts evidence to convict the defendant because he was a bad person. *See State v. Shah*, 2d Dist. Montgomery No. 25855, 2014-Ohio-1449, ¶ 39-40; *State v. Moore*, 2d Dist. Greene No. 2010 CA 13, 2011-Ohio-636, ¶ 23-24.

{¶41} In this case, the other-acts evidence was neither unjustified nor pervasive. Nothing in the record suggests that the jury used improper other-acts evidence to convict Johnson because he was a bad person. Therefore, the trial court did not commit plain error in failing to give a limiting instruction after the testimony of every witness whose testimony included other-acts evidence.

{¶42} In sum, we hold that none of the other-acts evidence of which Johnson complains or the trial court's failure to give limiting instructions rose to the level of plain error or was so prejudicial that it requires reversal of Johnson's convictions. Therefore, we overrule Johnson's first assignment of error.

### III. Crim.R. 29 Motions/Sufficiency

{¶43} In his second assignment of error, Johnson contends that the trial court erred in failing to grant his Crim.R. 29 motions for judgments of acquittal on

12

the counts for murder and having weapons under a disability, which is the same as a claim that the evidence was insufficient to support the convictions. *See State v. Jillson,* 1st Dist. Hamilton No. C-110430, 2012-Ohio-1034, ¶ 6; *State v. Brewster*, 1st Dist. Hamilton Nos. C-030024 and C-030025, 2004-Ohio-2993, ¶ 73. A court may not order a judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. *State v. Bridgeman*, 55 Ohio St.2d 261, 381 N.E.2d 184 (1978), syllabus; *State v. Ramirez*, 1st Dist. Hamilton No. C-050981, 2006-Ohio-5600, ¶ 8.

{¶44} Johnson was convicted as an accomplice. An accomplice is an individual who can be punished for complicity. Accomplices can be prosecuted and punished as if they were the principal offenders. *State v. Coleman*, 37 Ohio St.3d 286, 525 N.E.2d 792 (1988), paragraph two of the syllabus; *State v. Russ*, 1st Dist. Hamilton No. C-050797, 2006-Ohio-6824, ¶ 17; *Brewster* at ¶ 52.

{¶45} R.C. 2923.03(A)(2), the complicity statute, states that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * aid and abet another in committing the offense." To aid and abet is to assist or facilitate the commission of a crime or to promote its accomplishment. *State v. Johnson*, 93 Ohio St.3d 240, 754 N.E.2d 796 (2001), syllabus; *State v. Erkins*, 1st Dist. Hamilton No. C-110675, 2012-Ohio-5372, ¶ 45.

{¶46} Mere presence of an individual at the scene of the crime is not sufficient to prove that he or she was an accomplice. *Brewster*, 1st Dist. Hamilton Nos. C-030024 and C-030025, 2004-Ohio-2993, at ¶ 54. But the state may show aiding and abetting by direct or circumstantial evidence. It can be inferred from "presence, companionship and conduct before and after the offense is committed." *Russ* at ¶ 18, citing *Johnson* at 245.

{¶47} First, Johnson argues that the evidence was insufficient to support his conviction for having weapons under a disability because the state failed to prove that Lane, the principal offender, was under a disability. We disagree.

{¶48} In *State v. Dalmida*, 1st Dist. Hamilton No. C-140517, 2015-Ohio-4995, this court held that an accomplice can be convicted of having weapons under disability without holding the firearm if that accomplice aided and abetted the person who actually possessed and brandished the firearm. *Id.* at ¶ 16. "The accomplice can have constructive possession of the firearm by exercising dominion and control through another." *Id.* We further held that a nonshooting accomplice can be convicted for having weapons under a disability based on that accomplice's disability, not the disability of the shooter. *Id. Accord State v. Adams*, 8th Dist. Cuyahoga No. 93513, 2010-Ohio-4478, ¶ 15-21.

{¶49} Johnson invites us to reconsider our decision in *Dalmida* and follow *State v. Lewis*, 2d Dist. Greene No. 96 CA 12, 1997 WL 156596 (April 4, 1997). In *Dalmida*, we specifically rejected the logic of *Lewis*, and we decline to adopt its reasoning now.

{¶50} The evidence showed that Johnson had a prior felony conviction for trafficking in marijuana, which was the disability that precluded him from having a weapon. *See* R.C. 2923.13(A)(3). It also showed that Lane had possessed the gun and that Johnson had aided and abetted Lane in committing the murder. Johnson was not, strictly speaking, aiding and abetting Lane in the commission of the offense of having weapons under a disability. Instead, Johnson was convicted of constructively possessing the weapon while under a disability, his own disability. *See Adams* at ¶ 21. Therefore, the evidence was sufficient to support Johnson's conviction for having weapons under a disability.

**{¶51}** Next, Johnson contends that the evidence was insufficient to support the conviction for felony murder. He argues that the state relied on inference stacking to demonstrate complicity. We disagree.

**{¶52}** An inference based solely and entirely upon another inference, unsupported by any additional fact or inference from other facts, is an inference upon an inference "and may not be indulged in by the [trier of fact]." *State v. Hill*, 1st Dist. Hamilton No. C-030678, 2004-Ohio-2275, ¶ 9, quoting *Hurt v. Charles J. Rogers Transp. Co.*, 164 Ohio St. 329, 130 N.E.2d 820 (1955), paragraph two of the syllabus. But an inference based in part on another inference and in part on facts is a parallel inference, which, if reasonable, may be relied on by the trier of fact. *Hill* at ¶ 9, citing *Hurt* at paragraph two of the syllabus. It is also permissible for the trier of fact to draw two inferences from the same facts as a basis for its ultimate findings unless reasonable minds could reach but one conclusion to the contrary. *Hill* at ¶ 9, citing *Hurt* at paragraphs three and four of the syllabus.

**{¶53}** We note that Johnson argues that the evidence was insufficient to support a conviction for felonious assault. Though he was found guilty of felonious assault by the jury, he was not convicted of that offense since the trial court merged it with the murder conviction. A conviction requires a guilty finding and a sentence. *State v. Henderson*, 58 Ohio St.2d 171, 177-179, 389 N.E.2d 494 (1979); *State v. Obsaint*, 1st Dist. Hamilton No. C-060629, 2007-Ohio-2661, ¶ 24. So we need only address felonious assault as it pertains to the murder charge.

**{¶54}** To prove murder, the state had to show that Johnson caused the victim's death as the proximate result of Johnson committing or attempting to commit felonious assault. *See* R.C. 2903.02(B). To prove felonious assault, the state was required to show that Johnson knowingly caused serious physical harm to the victim. *See* R.C. 2903.11(A)(1).

15

{¶55} The video footage showed Lane and Johnson acting in concert to attack the victim. The video from the Metro bus showed Johnson leaning into the driver's side window of the victim's car and punching him. Johnson admitted to the police that he had punched Keith. At the same time, Lane was on the passenger side of the car. Three shots are heard on the video, and Lane fled the scene with Johnson right behind him. The video showed that Johnson was an active participant in the assault against the victim. The coroner's testimony also corroborated what was shown in the video. The trier of fact was not required to stack an inference upon an inference to determine that Johnson had aided and abetted Lane in the murder.

{¶56} Consequently, reasonable minds could reach difference conclusions as to whether the state had proved each of the material elements of the crimes beyond a reasonable doubt. Therefore, the trial court did not err in overruling Johnson's Crim.R. 29 motions for judgments of acquittal, and we overrule Johnson's second assignment of error.

### IV. Manifest Weight

{¶57} In his third assignment of error, Johnson contends that his convictions were against the manifest weight of the evidence. After reviewing the record, we cannot say that the trier of fact lost its way and created such a manifest miscarriage of justice that we must reverse the convictions and order a new trial. Therefore, the convictions were not against the manifest weight of the evidence. *See State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *Jillson*, 1st Dist. Hamilton No. C-110430, 2012-Ohio-1034, at ¶ 6. Johnson argues that the state's evidence was not credible, but matters as to the credibility of evidence are for the trier of fact to decide. *State v. Bryan*, 101 Ohio St.3d 272, 2004-Ohio-971, 804

16

N.E.2d 433, ¶ 116; *Wallace*, 1st Dist. Hamilton No. C-160613, 2017-Ohio-9187, at ¶ 70. We overrule Johnson's third assignment of error.

### *V. Summary*

{¶58} In sum, we find no prejudicial error in the admission of evidence that would require reversal of Johnson's convictions. His convictions were supported by sufficient evidence and were not against the manifest weight of the evidence. Consequently, we overrule all three of his assignments of error and affirm his convictions.

Judgment affirmed.

**CUNNINGHAM, P.J.,** and **MILLER, J.,** concur.

Please note:

The court has recorded its own entry this date.